**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 14-CR-234-JPS |
| A.S.R., a juvenile male, | |
| Defendant. | ORDER |

1. OVERVIEW

On December 5, 2014, the government filed a Juvenile Information charging the defendant, A.S.R., a juvenile male, with violations of 18 U.S.C. §§ 2113 and 2, and 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. (Docket #1). The two counts against the defendant arise from the attempted robbery of the Great Midwest Bank in West Allis, Wisconsin. *Id.*

During the robbery, two masked individuals entered the bank, one with a firearm, and attempted to command a teller to give them money. (*See* Docket #3 at 2). The teller ducked down below the counter and refused to comply, despite the armed individual tapping on the security glass with the gun and yelling: "Get Up! Give me your money!" *Id.* at 3. After the teller continued ducking below the counter, the two individuals eventually left. *Id.* They were later caught—one of the individuals being the defendant—and the gun was also recovered. *Id.* at 4.

Pursuant to 18 U.S.C. § 5032, the government—in addition to filing the juvenile information—filed a certification to proceed under the Federal Juvenile Delinquency Act ("JDA"), 18 U.S.C. § 5031 *et seq.* (Docket #5), and a motion for mandatory transfer of proceedings against the juvenile to adult criminal prosecution. (Docket #6). In the motion for mandatory transfer, the

government seeks to use a prior juvenile delinquency adjudication against the defendant as a "prior conviction" under § 5032 (fourth unnumbered paragraph), triggering mandatory transfer of the juvenile (subject to limitations that will be discussed in more detail below). This prior juvenile delinquency adjudication was for Armed Robbery with Threat of Force–Party to a Crime, pursuant to Wisconsin Statutes §§ 943.32(2) and 939.05.

The defendant was originally charged as an adult in state court with the attempted robbery of the Great Midwest Bank, but those charges were dismissed after the filing of the juvenile information and a criminal complaint in this matter (in order to secure the defendant's arrest and detainer). (*See* Docket #14 at 4-5). Thereafter, the state charges were dismissed at a hearing on December 9, 2014. *Id.*; (Docket #12 at 20) (noting that "at a hearing scheduled for 8:30 a.m. [on December 9, 2014,]…the state case against A.S.R. was dismissed").

Despite the state charges being dismissed on December 9, 2014, the FBI did not take physical custody of the defendant until December 10, 2014. (Docket #14-1 at 3). An affidavit from the FBI special agent in charge of the investigation notes that the delay was due to him "not receiv[ing] notification from anyone at the Milwaukee Criminal Justice Facility or any other state facility on December 9, 2014, that A.S.R. was being released from state custody." *Id.* at 2. Instead, the FBI contacted the jail on the morning of December 10, 2014 (at 8:00 a.m.), to inquire on the status of the defendant and was notified that he would be released in a few hours. *Id.* at 3.

Prior to taking custody of A.S.R., the FBI "contacted A.S.R.'s mother to inform her that [he] would be coming into federal custody based on pending charges for attempted bank robbery…[and] would be transferred to the federal courthouse in Milwaukee to appear before a judge." *Id.* The conversation between the FBI and A.S.R.'s mother occurred around 9:00 a.m., some 30 minutes before he was taken into custody by the FBI.

At 9:30 a.m. on December 10, 2014, the FBI took physical custody of A.S.R. and advised him of his rights. *Id.* The FBI agent's affidavit states that "[a]t no time while A.S.R. was in [the FBI agent's] custody on December 10, 2014, did [he] or any other law enforcement officer in [his] presence attempt to question A.S.R. about criminal activities." *Id.*

The defendant was brought before Magistrate Judge Callahan at 2:00 p.m. on that same day (December 10, 2014) for his initial appearance (*see* Docket #9), and was ordered detained. (Docket #8). On December 11, 2014, the defendant came before the Court for a hearing on the motion for mandatory transfer (*see* Docket #11), and the defendant informed the Court of his intent to oppose the motion for mandatory transfer. *Id.* The defendant filed a brief in opposition to the government's mandatory transfer motion on December 19, 2014. (Docket #12). The government filed a reply on December 31, 2014. (Docket #13).

On January 8, 2015, the defendant requested oral argument on the government's motion for mandatory transfer; the government did not oppose this request. (Docket #15). The Court granted the defendant's request and held oral argument on January 20, 2015. (*See* Docket #16, #17).

Now having all the pertinent facts before the Court and full briefing by the parties, the Court turns to the government's motion for mandatory transfer and will grant it for the reasons that follow.

2. DISCUSSION

The defense has raised objections to the government's motion for mandatory transfer on two grounds: (1) a failure to meet the requirements of § 5032, thus precluding mandatory transfer; and (2) violations by the government of § 5033 that require dismissal of the entire case. The Court will address each objection in turn, below.

2.1   18 U.S.C. § 5032

"Section 5032 envisions two avenues by which a transfer [of a juvenile to adult status] may occur. First there are so-called permissive transfer provisions.…The second avenue by which a juvenile may be transferred to adult status is by way of the mandatory transfer provision." *Impounded*, 117 F.3d 730, 732 (3d Cir. 1997). The latter is at issue, here.

The mandatory transfer provision provides that:

> a juvenile who is alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense, or would be an offense described in section 32, 81, 844(d), (e), (f), (h), (i) or 2275 of this title, subsection (b)(1) (A), (B), or (C), (d), or (e) of section 401 of the Controlled Substances Act, or section 1002(a), 1003, 1009, or 1010(b) (1), (2), or (3) of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 953, 959, 960(b) (1), (2), (3)), and who has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed, shall be transferred to the appropriate district court of the United States for criminal prosecution.

18 U.S.C. § 5032.

Distilled to its essentials, mandatory transfer requires: (1) a juvenile alleged to have committed an act after his sixteenth birthday; (2) the juvenile's act is "a felony that has an element the use of physical force or by its nature involves the risk of physical force, or is an offense specifically enumerated in the paragraph," *Impounded*, 117 F.3d at 732; and, (3) the juvenile was previously found guilty "of an act which if committed by an adult would have been one of the offenses set forth in [the fourth unnumbered paragraph]." § 5032; *see also Impounded*, 117 F.3d at 732.

The defendant does not contest requirements (1) and (2). (*See* Docket #12 at 5) (collapsing requirements one and two and stating that, "[t]he defense does not dispute that the charges brought by the government meet the first mandatory-transfer requirement"). Nor could he. As noted above, the defendant is charged with attempting to rob the Great Midwest Bank by use of force, violence, and intimidation, *see* 18 U.S.C. § 2113(a); and, he was 17 years, 7 months, and 24 days old at the time of the alleged crime. (*See* Docket #14 at 3).

The parties do contest requirement (3) relating to the predicate offense. Namely, the defendant argues that his prior conviction for armed robbery as party to a crime is not one of the "enumerated offenses" that are "set forth" in the fourth unnumbered paragraph of § 5032. (*See* Docket #12 at 4-5). The defendant argues that the offenses set forth in that paragraph include only those *specifically enumerated.* (Docket #12 at 17). Or, to state the defendant's argument differently, that a juvenile cannot qualify for mandatory transfer if his prior conviction is for an offense *not specifically listed* in § 5032. To support this reading of the statute, the defendant cites *United States v. Juvenile Male No. 1*, 47 F.3d 68, 69 (2d Cir. 1995), which states

that a prior conviction satisfies the mandatory transfer provision if it is "one of the enumerated offenses supporting discretionary transfer."

The defendant also argues that even if his prior conviction could technically constitute one of the offenses, the party to a crime modifier "is broader and more expansive" than § 2—the federal aider and abettor statute—because the Wisconsin statute permits conspirator liability; thus, "under the categorical approach applied in [these] cases," *see, e.g., United States v. M.C.E.*, 232 F.3d 1252, 1256-57 (9th Cir. 2000) (noting that § 5032 is virtually identical to 18 U.S.C. § 16 and "both [statutes] direct us to adopt the categorical approach") (citing *Taylor v. United States*, 495 U.S. 575, 600-02 (1990)), "conduct covered by the state statute is not covered by the federal statute," making the defendant's prior conviction fall outside the scope of that intended by Congress in enacting the JDA. (Docket #12 at 11-12).

The government argues, on the other hand, that the defendant's prior conviction does fall within the scope of § 5032. That is so because his prior conviction: (1) "is analogous to a conviction under 18 U.S.C. § 2111, which is one of the listed offenses in § 5032," (Docket #14 at 9); (2) is a "crime of violence" as discussed in § 5032 and the defendant cites no authority finding that armed robbery is not a "crime of violence" (*see* Docket #14 at 11-12); and (3) is analyzed under the categorical approach, and thus the party to a crime modifier makes no difference since "[s]ection 939.05 does not criminalize any specific act and…is not a criminal offense" and need not even be included in a charging instrument. (Docket #14 at 12-13).

To solve this puzzle, the Court must first determine what offenses are "set forth" in the fourth unnumbered paragraph of § 5032. This is not an easy

task given that—as the Court noted at oral argument—" this is about as dysfunctional…a statute…[as] you could find."¹ (Oral Arg. Tr. at 16).

To start, it must be noted that *Juvenile Male No. 1* offers no support for the defendant's interpretation regarding "enumerated offenses," given: (1) the opinion addressed only a discretionary transfer and did not purport to interpret or rule on the mandatory transfer requirements; and (2) the quoted passage is from the court's introduction, which summarizes the JDA and its myriad statutory requirements. *Id.* The passage the defendant quotes, therefore, is unmistakably dicta.

As to the merits of the defendant's "enumerated offenses" interpretation, the Court declines to interpret the statute as the defendant proposes for two reasons. First, if Congress intended that only specific, statutorily enumerated predicate offenses could qualify a juvenile for mandatory transfer, Congress would have written the statute accordingly. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (noting that the Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there"). To adopt the crabbed reading the defendant suggests, the Court would be required to read out "one of the offenses set forth in this paragraph" and read in, for example, "one of the statutorily enumerated offenses in this paragraph." To be sure, a court "may only interpret and

---

¹The defendant argues that the statute's lack of clarity requires the Court to apply the rule of lenity and resolve the statute's ambiguity in the defendant's favor. (*See* Docket #12 at 10). However, nowhere in this order does the Court hold that the statute is ambiguous; instead, the Court has construed the statute based on the greater weight of the authority in this area. Whether the statute is indeed ambiguous and, more generally, answering the Court's question at oral argument as to "what Congress was getting at" when it drafted it, (*see* Oral Arg. Tr. At 16), are questions best left for the Seventh Circuit Court of Appeals.

enforce the laws Congress [enacts]," but "may not rewrite or amend them as [it] see[s] fit." *Estate of Cowser v. C.I.R.*, 736 F.2d 1168, 1171 (7th Cir. 1984).

Section 5032's surrounding language also undermines the defendant's argument that Congress intended to restrict the predicate offenses requiring mandatory transfer to only those enumerated. To wit, the discretionary transfer provision applicable to juveniles between thirteen and fifteen years old restricts transferrable offenses to only those enumerated, *see* § 5032 (stating that the provision relating to acts committed after a juvenile's fifteenth birthday are applicable to those between thirteen and fifteen "if the crime of violence is an offense under section 113 (a), 113 (b), 113 (c), 1111, 1113, or, if the juvenile possessed a firearm during the offense, section 2111, 2113, 2241 (a), or 2241 (c)"); *United States v. Sealed Appellant 1*, 591 F.3d 812, 817-18 (5th Cir. 2009) (interpreting this section to apply to juveniles thirteen to fifteen years old only if the juvenile committed one of the offenses in the "enumerated statutes"). This other provision demonstrates that Congress could, and did, narrow the offenses that meet certain requirements, where appropriate; thus, it appears Congress did not, by using the language "one of the offenses set forth in this paragraph," intend to exclude using non-enumerated felony crimes of violence[2] as predicate offenses.

---

[2]While the term "crime of violence" is not in the mandatory transfer provision, its definition in 18 U.S.C. § 16 is virtually identical to the language used in § 5032 to identify a non-enumerated offense that also qualifies a juvenile for mandatory transfer; specifically, a "felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense." *Compare* § 16 (defining "crime of violence") *with* § 5032; *see also* M.C.E., 232 F.3d at 1257 (noting the statutes are "virtually identical"); *Impounded*, 117 F.3d at 738 n.12 ("The language of the second factor of the § 5032 mandatory transfer provisions tracks the language of § 16 in all relevant respects.").

As an aside on the statute's text, the Court also rejects the defendant's argument that "one of the offenses set forth in this paragraph" cannot be a crime of violence because a crime of violence is "not 'one' specific offense," but is a term "that incorporate[s] a wide range of varying behavior." (Docket #12 at 16). Even were that true, the argument fails. The reason is simple: the defendant's argument ignores the express language of the mandatory transfer provision, which never uses the term "crime of violence," instead defining a transferrable offense as an "act…which if committed by an adult would be a felony *offense* [that, in essence, meets the statutory definition of a "crime of violence" in 18 U.S.C. § 16]*.*" § 5032. So, if a predicate offense is an offense "set forth" in that paragraph, and a transferrable charge is defined, *inter alia*, as a felony offense that meets the definition of a crime of violence, then juvenile offenses that are felony crimes of violence qualify as predicate offenses. *See United States v. David H.*, 29 F.3d 489, 493 (9th Cir. 1994) (holding that "[m]andatory transfer is triggered by a prior conviction of '*a felony offense that has an element thereof the use, attempted use, or threatened use of physical force against the person of another…*'").

Second, the defendant's narrow interpretation of "offenses set forth in this paragraph" has explicitly been rejected by at least one circuit court. *See United States v. Juvenile*, 228 F.3d 987, 989-90 (9th Cir. 2000) (rejecting the argument that only offenses enumerated or "specifically identified" can serve as predicate offenses because such a reading "ignores the plain disjunctive list of offenses in the statute"). The court in *Juvenile* went on to hold that the juvenile defendant's prior delinquency adjudication for assault resulting in serious bodily injury was "clearly" a predicate offense because it was a crime of violence. *Id.* at 990. And, that was so because the offense was set forth

"under the statute's definition of those crimes that trigger mandatory transfer to adult status." *Id.*

The defendant's narrow interpretation has also been implicitly rejected by numerous circuit courts. *See M.C.E.*, 232 F.3d at 1257 (holding that residential burglary—an offense not specifically listed in the statute—was a "crime of violence" and thus qualified as a predicate offense); *Impounded*, 117 F.3d at 732 (stating that the predicate offense requirement for mandatory transfer is met if the juvenile has previously been found guilty of a crime that would satisfy factor (2), which the court defines as "a felony that has an element the use of physical force or by its nature involves the risk of physical force, or is an offense specifically enumerated in the paragraph"); *David H.*, 29 F.3d at 493-94 (same); *United States v. Juvenile Male (JNK)*, 1999 WL 427153, at *2 (6th Cir. 1999) (unpublished) (holding any charging offense can be a predicate offense by referencing the same definition for both; thus, an offense qualifies for either when it "either (a) involves the use, attempted use, or threatened use of violence or (b) by its very nature involves a substantial risk that violence may be used in committing the offense, or (c) is one of the offenses specifically enumerated in the statute" (if committed by an adult)).

The defendant's next—and, to be sure, more compelling argument—is that even if the defendant's predicate offense could fall within the offenses "set forth" in the fourth unnumbered paragraph of § 5032, the liability ascribed to the defendant—he was charged as party to a crime, pursuant to Wis. Stat. § 939.05—nonetheless removes the defendant's predicate offense from § 5032's ambit. This is because, the defendant's argument continues, Wisconsin's PTAC statute permits a wider scope of liability than even the federal aiding and abetting statute, 18 U.S.C. § 2. Namely, Wisconsin's PTAC statute includes liability not only for aiding and abetting, but

also for involvement as a conspirator. *See Holland v. State*, 280 N.W.2d 288, 292, 91 Wis.2d 134 (1979) (explaining Wis. Stat. § 939.05 as embodying "two different party-to-a-crime theories": aider and abettor liability and conspirator liability).

The defendant argues that sweeping in crimes involving aiding and abetting and, more germane to the gravamen of the defendant's argument, conspiracy offenses, would "greatly expand the number of juvenile convictions that fall under § 5032 mandatory transfer provision without any direct support."[3] (Docket #12 at 9). And, by direct support, the defendant means without explicit reference in the statute to either the federal aider and abettor statute, accessory statute, or, presumably, the conspiracy statute. *See* 18 U.S.C. §§ 2, 3, 373.

To begin, the defendant's argument ignores the fact that "both federal law and Wisconsin state law punish an aider and abettor as a principal." *United States v. Groce*, 999 F.2d 1189, 1191 (7th Cir. 1993); *Holland*, 280 N.W.2d at 293 (stating that "the purpose behind the enactment of sec. 939.05, Stats., was to abolish the common law distinctions between principals and accessories to a crime").[4] Thus, it would be redundant to specify the aider

---

[3]This argument also seems, at least to some extent, to be undermined by the fact that the charged offense against the defendant involves aiding and abetting and the prior state charge was for Robbery of a Financial Institution, Wis. Stat. 943.87, with an attempt and a PTAC modifier. (*See* Docket in State Case). To wit, the defendant's argument concedes that non-direct liability fits within the statute for chargeable offenses, but contests that non-direct liability is sufficient to bring a predicate offense within the mandatory transfer provision.

[4]Indeed, the Supreme Court noted in 2007 that "every jurisdiction—all States and the Federal Government—has expressly abrogated the distinction among principals and aiders and abettors who fall into the [second-degree principals] and [accessories before the fact] categories." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (internal quotation marks omitted).

and abettor statute—or make reference to liability at all—in § 5032, considering such liability is categorically included as a matter of law, across every jurisdiction. The Seventh Circuit confirmed as much in *Groce*, where the court found that a conviction for burglary as party to a crime in Wisconsin is "essentially analogous to aiding and abetting a burglary," *id.;* and, "[o]ne who aids and abets an offense 'is punishable as a principal,' 18 U.S.C. § 2, and 'the acts of the principal become those of the aider and abetter as a matter of law.'" *United States v. Mitchell*, 23 F.3d 1, 3 (1st Cir. 1994) (quoting United *States v. Simpson*, 979 F.2d 1282, 1285 (8th Cir. 1992)).

Thus, the defendant's argument that aiding and abetting liability falls outside the scope of § 5032's mandatory transfer provision—relating to predicate offenses—must fail.

But, the question remains as to whether the Wisconsin PTAC statute's inclusion of conspirator liability compels a different result.

The defendant argues that conspiracy offenses "ha[ve] explicitly been held to *not* be a basis for transfer under § 5032." (Docket #12 at 11) (citing *In Re Sealed Case*, 893 F.2d 363, 368 (D.C. Cir. 1990)) (emphasis in original). The defendant quotes *In Re Sealed Case* for this proposition; there, the D.C. Circuit stated that "§ 5032 of the Act sets out precisely which offenses precipitate transfer hearings, and conspiracy is not among them." 893 F.2d 363, 368 (D.C. Cir. 1990). And, notably, the Seventh Circuit did cite *In Re Sealed Case* for the same proposition in *United States v. Wilson*, 149 F.3d 610, 612 (7th Cir. 1998) (discussing *In Re Sealed Case* and noting that the D.C. Circuit's holding was

supported by interpreting § 5032 to "specifically preclude[] transfers when the charge is conspiracy").[5]

The scope of the defendant's argument fairly represents the state of the law in this area—in 1990. The Eighth Circuit held, just a year later (in 1991), that *In Re Sealed Case* does not stand for the proposition that a conspiracy *could never be* a transferrable offense (or a crime of violence). *See United States v. Juvenile Male*, 923 F.2d 614, 619 (8th Cir. 1991). Instead, the court found that "[a]t most, *In re Sealed Case* holds that conspiracy to commit a nonviolent crime…is not a crime of violence." *Id.*

More importantly, the defendant's argument is significantly undermined by what the Eighth Circuit went on to hold, in crystalline fashion: that "[the court] [had] no doubt that conspiracy to commit a violent crime is a crime of violence as contemplated by section[]…5032." *Id.* at 620. And, since then, other circuit courts have followed suit. *See United States v. Doe*, 49 F.3d 856, 866-67 (2d Cir. 1995) (holding that RICO conspiracy to commit robbery and extortion were crimes of violence within the meaning of § 5032); *United States v. Juvenile Male*, 118 F.3d 1344, 1350 (9th Cir. 1997)

---

[5]While the Seventh Circuit does mention *In Re Sealed Case*'s holding on the non-transferrability of conspiracy offenses in *Wilson*, the court did so only in passing. *See United States v. L.M.*, 427 F.Supp.2d 867, 870 (N.D. Iowa Apr. 12, 2006) (noting the language in *Wilson* on this issue and describing it as "opining in dicta"). Tacking on that *Wilson* involved only a discretionary transfer, the Court does not read *Wilson* to categorically resolve the issue in this circuit.

(holding that RICO conspiracy to commit Hobbs Act robbery was a crime of violence for purposes of § 5032).[6]

In light of the foregoing, the Court finds that the party to a crime modifier does not provide an escape hatch through which the defendant may extricate himself from the mandatory transfer provision.

The only question, then, is whether the substantive offense itself—armed robbery—is a crime of violence; namely, whether an element of the offense involves, *inter alia*, the threat of force against the victim. And, as the defendant concedes, Wisconsin's armed robbery statute does indeed require that the offense involve the threat of force. (Docket #12 at 12-13). This is essentially game, set, match.

The defendant's final argument, assuming in the alternative that the Court found as it has, is that the defendant's actual "act" during the predicate offense "may have been nothing more than being present at the scene of the crime, being friends with the perpetrator, and knowing of the perpetrator's plan to commit robbery." (Docket #12 at 18). Even if that was the defendant's involvement (although that does not seem to be the case),[7] the categorical approach does not permit the Court to look at the underlying conduct to determine if an offense is a crime of violence, so long as the state offense is not broader than the general crime. And, the defendant readily admits that the Wisconsin statute is not broader, indeed stating that it "may

---

[6]Whether conspirator liability was indeed meant to fall within the scope of § 5032 is ultimately a question for Congress. In some respects, the defendant's argument regarding conspiracy—at least here, with the facts before the Court—is merely an academic one. The defendant does not seem to be arguing that his involvement was indeed that of a conspirator but merely that *it could have been.*

[7](*See* Docket #11) (stating—in a supplement to the juvenile's record—that his involvement included getting out of the car to assist with the armed robbery).

actually be narrower" and thus the defendant's conduct "appears to be within the scope of § 2111." (Docket #12 at 13).

Thus, the defendant's argument that "theoretically" his involvement could have been minimal is a nonstarter. Absent a divisible statute or an offense that is broader than the general crime, the Court's analysis of the defendant's predicate offense under § 5032 is not fact specific, *see United States v. Johnson*, 680 F.3d 966, 983 (7th Cir. 2012) ("We apply a categorical approach in determining if a prior conviction is a crime of violence, focusing 'not on the facts of the defendant's particular crime, but only on the fact of conviction and the essential elements of the offense.'"), even, it appears, when non-direct liability is charged.

Thus, so long as the predicate offense is a crime of violence, it is of no moment to a court what manner the individual participates in the commission of the crime, or whether their individual participation would meet the substantive elements of the underlying offense, standing alone. *See Taylor,* 490 U.S. at 602; *David H.*, 29 F.3d 489, 494 (stating that "[t]he plain language of § 5032 indicates the court is not to reexamine the facts underlying the prior conviction" nor consider "the specific conduct underlying the conviction"); *M.C.E.*, 232 F.3d at 1255 (holding that categorical approach applies to analysis of predicate offenses under § 5032 and noting that courts are to focus on the elements of the crime and "must not 'look [] beyond the penal statute' to see whether the conduct of the juvenile resulted in violence or a substantial risk of violence in the particular case before the court") (citing *David H.*, 29 F.3d at 493).

And this is especially true given that in Wisconsin, "[t]he party to a crime charge does not add to or alter the elements of the offense to which the defendant is charged as a party," because the defendant's "manner of

participation in a crime is not an element of the offense to which one is charged as a party to a crime." *State v. Horenberger*, 349 N.W.2d 692, 695, 119 Wis.2d 237 (1984).

Finally, even assuming *arguendo* that the Court were to find that the party to a crime statute requires that the Court delve into the particulars of the defendant's offense, it would still reach the same result. It cannot seriously be argued that getting out of a car with a co-actor to commit an armed robbery (*see* Docket #11) does not involve an offense that "by its very nature involves a substantial risk" that physical force against another may be used in committing the offense. *See* § 5032.

In sum, then, the Court finds that: (1) the defendant's prior conviction qualifies as a crime of violence and thus is a transferrable offense; (2) this is so irrespective of the party to a crime modifier; and, (3) this result is compelled by the categorical approach applied in such cases. Consequently, the defendant's prior conviction qualifies him for mandatory transfer.

   2.2     18 U.S.C. § 5033

Section 5033 requires, *inter alia*, that: (1) "[w]henever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer…shall immediately notify…the juvenile's parents"; (2) the arresting officer "shall also notify the parents…of the rights of the juvenile and of the nature of the alleged offense"; and (3) the juvenile "shall be taken before a magistrate judge forthwith." Regarding requirement (3), § 5033 goes on to state that "[i]n no event shall the juvenile be detained for longer than a reasonable period of time before being brought before a magistrate judge."

The defendant originally asserted that the government violated all three requirements described above. To wit, the defendant alleged in his brief that: (1) despite the state case being dismissed on December 9, 2014, around

9:00 a.m., the defendant's parents were not contacted until December 10, 2014, around 9:00 a.m., roughly 24 hours after the defendant was in federal "custody"—and thus this twenty-four (24) hour delay violated the requirement that his parents be "immediately" notified; (2) even when the government contacted the defendant's parents, "the federal government official…did not mention or explain A.S.R.'s rights, again violating § 5033"; and (3) the defendant's state case "was dismissed on Tuesday December 9 at roughly 9:00 a.m.[,] [b]ut he was not brought before a magistrate judge until Wednesday, December 10 at 2 p.m." and this twenty-nine (29) hour delay meets neither the "forthwith" nor the more lenient "reasonable period of time" standards annunciated in § 5033. (Docket #12 at 19-21).

And, the defendant argued, "there was no excuse for the delays in this case" and other federal courts "confronted with such delays and violations of § 5033 have dismissed the government's charges." *Id.* at 21.

However, at oral argument, the defendant essentially abandoned all of the alleged violations noted above (*see* Oral Arg. Tr. at 13-17) except the failure of the FBI to inform A.S.R.'s parents of his rights. *Id.* at 14 (stating that "even if we accept the second affidavit put out by the government from [the FBI agent], it still lays out a violation of Section 5033 about the notification requirements" and specifically, that the FBI agent "never explained the rights that A.S.R. had in federal court [to his parents] as required by the statute").

The government, during oral argument, stated that the FBI agent could not remember if he informed A.S.R.'s mother of his rights; thus, "it was left out of the affidavit as one thing that couldn't be remembered." *Id.* at 19. The government further equivocated that "at this point that may have occurred, we just can't tell." *Id.*

Given that the defendant abandoned the alleged violations related to "delay,"[8] the Court will address only the government's alleged violation of § 5033 relating to informing A.S.R.'s parents of his rights. From the recitation above, it is clear that the government did indeed violate this requirement of § 5033. This is so because "[t]he burden is on the government to show compliance with § 5033," *United States v. C.M.*, 485 F.3d 492, 499 (9th Cir. 2007); *United States v. Juvenile Male*, 554 F.3d 456, 467 (4th Cir. 2009) (same), and the affidavit of the FBI agent did not expressly state that A.S.R.'s parents were informed of his rights. The government conceded as much by equivocating on the issue at oral argument. (*See* Oral Arg. Tr. at 19).

However, the Court finds that such a *de minimis* violation of § 5033 does not require dismissal of the entire case, or any measure of sanction, for that matter. First, at oral argument, neither party was sure what the appropriate sanction should be, if any. (*See* Oral Arg. Tr. at 16) (explaining that the defense "[did] think that the statute was violated" but "in terms of what specific sanction should be appropriate," the defense was "not quite sure" given "the Court's position that there might have been no harm here"); *Id.* at 19 (explaining that the government's position, "[w]ith regard to a

---

[8]And, even if the defendant had not conceded these arguments, the Court would not have ruled in his favor. The basis for all of these "delay" arguments was the extra twenty-four hours between the dismissal of his state charges on December 9, 2014, and the proceedings and contact with his parents that occurred on December 10, 2014. (Docket #12 at 19-21). But, the protections afforded juveniles under § 5033 do not become operative until the juvenile is taken into federal custody. *See United States v. Doe*, 226 F.3d 672, 679 (6th Cir. 2000) (noting that § 5033 "comes into play only after a juvenile is taken into 'custody,'" and that means *federal custody*). Thus, the twenty-four hours noted above do not become part of the equation because the defendant was not in federal custody until December 10, 2014. With that in mind, and as the defendant appeared to concede at oral argument, none of the delays originally alleged could reasonably be found to have violated § 5033's provisions.

sanction," was that it saw no harm because it is "a technical aspect of [the] statute" and "under these circumstances" a violation "has no impact on this case"). This is not surprising, given that the statute itself provides no insight as to sanctions. *See United States v. Juvenile Male*, 554 F.3d 456, 467 (4th Cir. 2009) ("The Act does not specify any remedy for a violation of its provisions.").

And, second, where Courts have found that violations were sanction-worthy, those violations have been particularly egregious or prejudiced the defendant. *See, e.g., C.M.*, 485 F.3d at 505-06 (holding that "the government violated every requirement of § 5033," its conduct "effectively nullified the unequivocal provisions of the statute," and "the resulting confession was highly prejudicial" and should not have been used); *United States v. Juvenile (RRA-A)*, 229 F.3d 737, 744 (9th Cir. 2000) (noting that reversal is required when "the government's conduct was so egregious that it deprived the juvenile of due process of law").

There is no evidence before the Court that the government acted egregiously or that the failure to inform A.S.R.'s parents was anything but harmless. *See United States v. Wendy G.*, 255 F.3d 761, 767 (9th Cir. 2001) (noting that in assessing harmlessness, the court must be convinced beyond a reasonable doubt that the government's misconduct did not give rise to any prejudice). In this instance, A.S.R. was not questioned by federal authorities, nor was the failure to inform his parents part of a larger scheme to coerce a confession or otherwise improperly secure a conviction.

Therefore, lacking any real harm or prejudice to the defendant, and without a guide as to the appropriate sanction, the Court declines to conjure up its own merely for the sake of doing so. Rather, in this instance, the Court finds the single violation of § 5033 was harmless.

Accordingly,

IT IS ORDERED that the government's motion for mandatory transfer of proceedings against the juvenile to adult criminal prosecution (Docket #6) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the government's motion to seal the case (Docket #2), made pursuant to 18 U.S.C. § 5038 and General Local Rule 79, be and the same is hereby GRANTED; and,

IT IS FURTHER ORDERED that the Juvenile Information (Docket #1) be and the same is ordered UNSEALED and this Mandatory Transfer Order, together with all subsequent filings not specifically ordered filed under seal shall be filed and docketed as part of the public record in this case.

Dated at Milwaukee, Wisconsin, this 27th day of January, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge